UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICTORIA A. VISHNER,

                     Plaintiff,

    -vs-                        **No. 1:14-CV-00431 (MAT)**
                                         **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                     Defendant.

---

## I. Introduction

Represented by counsel, Victoria A. Vishner ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II. Procedural History

The record reveals that in June 2009, plaintiff (d/o/b May 14, 1974) applied for DIB, alleging an amended onset date of disability as of August 19, 2009. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Diana Weaver on February 4, 2011, in Phoenix, Arizona, where

plaintiff lived at the time. The ALJ issued an unfavorable decision on February 22, 2011. On March 29, 2012, the Appeals Council reversed the ALJ's decision and remanded the matter with specific instructions, including instructions to give further consideration to the examining source opinion of Dr. Drake and the nonexamining opinion of Dr. Jonathan Zuess, and to obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on plaintiff's occupational base.

On remand, plaintiff's case was assigned to ALJ David Lewandowski ("the ALJ"), who held a hearing in Buffalo on August 8, 2012. In a decision dated September 10, 2012, the ALJ denied plaintiff's application. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Evidence**

Medical treatment records prior to the relevant time period reveal that plaintiff had a longstanding diagnosis of bipolar disorder, two prior suicide attempts, and a history of self-cutting. On August 19, 2009, the amended alleged onset date, plaintiff presented to psychiatrist Dr. Gorky Herrera after calling an emergency crisis line. Plaintiff reported that she had not taken lithium, which she had previously been prescribed for bipolar symptoms, for three years. Dr. Herrera diagnosed her with bipolar disorder, not otherwise specified ("NOS"), and borderline personality disorder. He noted a global assessment of functioning ("GAF") score of 38, indicating some impairment in reality testing

2

or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *See generally* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), at 34 (4th ed. rev. 2000). He prescribed lithium and instructed plaintiff to begin outpatient care.

Plaintiff then treated at the Marc Center Outpatient Clinic for approximately a year from September 2009 through November 9, 2010. Her treating counselor was counselor Larry Fry, MA, LPC,[1] who assessed plaintiff at an initial evaluation with a GAF of 52, indicating moderate symptoms. Treatment notes from the Marc Center, signed by nurse practitioner ("NP") Terry Hilger, indicate that plaintiff's mental condition fluctuated, and plaintiff often complained about labile moods. She was prescribed various psychiatric drugs including Risperdal (an antipsychotic), Abilify (an antipsychotic), Klonopin (a sedative used to treat anxiety), and Lamictal (an anticonvulsant often used for treatment of bipolar symptoms). Findings of mental status examinations ("MSEs"), however, were largely unremarkable, although plaintiff was often noted to have decompensated rather than remained stable between appointments.

---

[1] Licensed professional counselors (LPCs) are master's-degreed mental health service providers, trained to work with individuals, families, and groups in treating mental, behavioral, and emotional problems and disorders.

3

The record contains several opinions from consulting state agency psychologists. On August 10, 2009, Dr. Elliott Salk examined plaintiff and opined that she had no limitations other than a mild impairment in social interaction because plaintiff "talked a little quickly." T. 421. On August 20, 2009, reviewing psychologist Dr. Rosalia Pereyra on August 20, 2009, opined that plaintiff had no severe mental impairments. Dr. Pereyra appeared to base her assessment entirely on Dr. Salk's consulting exam.

On January 13, 2010, Dr. Celia Drake examined plaintiff and opined that she was able to follow and recall simple instructions in a work setting, and that she may have problems responding appropriately in a work setting "although she should be able to perform in some work settings where she [had] less social interaction." T. 472. A second reviewing psychologist, Dr. Jonathan Zuess, completed an assessment on February 8, 2010, in which he opined that plaintiff was markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and that she was moderately limited in several areas involving understanding and memory, sustained concentration and persistence, and social interaction. As noted above, the Appeals Council order dated March 29, 2012 instructed the ALJ to give further consideration to the opinions of Drs. Drake and Zuess on remand.

In a November 9, 2010 functional capacity report, plaintiff's counselor Mr. Fry opined that plaintiff had slight difficulty

4

understanding and remembering simple instructions; moderate difficulty carrying out simple instructions and interacting appropriately with the public; marked difficulty understanding and remembering detailed instructions, making judgments on simple work-related decisions, interacting appropriately with co-workers, and responding appropriately to changes in a routine work setting; and extreme difficulty interacting appropriately with supervisors and responding appropriately to work pressures in a usual work setting. He commented that plaintiff's "severe and rapid mood swings disallow employment due to her constant conflicts with supervisors, co-workers, and the public." T. 554.

After moving from Arizona to the Buffalo, New York area in May 2011, plaintiff eventually began psychiatric treatment at Horizon Corporations on June 29, 2012. In an initial psychiatric assessment, plaintiff was assessed with labile mood, fair concentration, insight, and judgment, and an otherwise normal MSE. She reported NP Katie Millard that she had last engaged in self-cutting behavior in March 2012. Plaintiff was prescribed Lamictal, Celexa (a selective serotonin reuptake inhibitor ["SSRI"]), Abilify, and Klonopin.

## IV. The ALJ's Decision

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2013. At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ found that plaintiff had not engaged in substantial gainful

5

activity since November 24, 2008, the application date. At step two, the ALJ found that plaintiff had the following medically determinable impairments: bipolar disorder and borderline personality disorder. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: "she [was] limited to remembering, understanding and carrying out instructions and performing simple tasks"; she could "have no or limited proximity to co-workers with superficial interaction with co-workers"; she could not "interact with the general public," could have only occasional supervision, and could perform only "non-confrontational and non-negotiations type jobs"; could occasionally make simple decisions; and she could tolerate occasional changes in a work setting. T. 27. At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a retirement home cleaner and plant care worker, "as they are actually performed and normally performed, and as a photo machine equipment operator, as it is normally performed." T. 31. Therefore, the ALJ did not proceed to step five and found plaintiff not disabled at step four.

**V. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the

6

decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A. Discussion of Vocational Expert Testimony**

Plaintiff contends that the ALJ erred in failing to address conflicting testimony pursuant to SSR 06-03p. Specifically, plaintiff argues that the vocational expert ("VE") testimony taken in Arizona conflicted with the new VE testimony taken after plaintiff's case had been transferred to ALJ Lewandowski. According to plaintiff, ALJ Lewandowski failed to reconcile the testimony of the two experts prior to concluding that plaintiff could perform past relevant work ("PRW").

In plaintiff's initial hearing, which took place in Arizona, ALJ Diana Weaver questioned VE Linda Tolley as to whether an individual with the following limitations could perform any of plaintiff's PRW: "limited to simple, unskilled work, requiring work that is isolated with only occasional supervision . . . only occasional interaction with the public and occasional interaction with coworkers[.]" T. 119. VE Tolley testified that this individual could perform the positions of housekeeper (or, as plaintiff performed it, retirement home cleaner) and stock clerk, but none of plaintiff's remaining PRW, which included the jobs of cashier, plant care worker, and photo machine equipment operator. When ALJ Weaver added the restriction of no interaction with the public, VE

7

Tolley testified that such an individual was "precluded from all work." T. 120.

At plaintiff's hearing in Buffalo, ALJ Lewandowski asked VE Jay Steinbrenner if an individual with the restrictions of the RFC (i.e., a full range of work at all exertional levels, but limited to remembering, understanding and carrying out instructions and performing simple tasks; no or limited proximity to co-workers with superficial interaction with co-workers; no interaction with the general public, only occasional supervision, and performance of only "non-confrontational and non-negotiations type jobs"; occasional simple decisionmaking; and tolerance of occasional changes in a work setting) could perform any of plaintiff's PRW. VE Steinbrenner responded that such an individual could perform the jobs of retirement home cleaner and plant care worker both as normally performed and as performed by plaintiff, and photo clerk as normally performed (but not as performed by plaintiff, because her job duties had included interaction with the public). As plaintiff notes, ALJ Lewandowski's hypothetical contained even more limitations than the most restrictive hypothetical given by ALJ Weaver, discussed above.[2]

Plaintiff argues that the VEs' testimony conflicted, because VE Tolley testified that when restricted to no contact with the public, plaintiff could perform no PRW, while VE Steinbrenner

---

[2] Although VE Steinbrenner testified that an individual with plaintiff's RFC could perform additional work in the national economy including commercial laundry worker and packaging machine operator, ALJ Lewandowski did not go on to make a step five finding due to his finding, at step four, that plaintiff could perform various PRW. Regardless, the Commissioner has not made a harmless error argument with regard to this issue.

testified that plaintiff could still perform three of her past relevant jobs. Plaintiff contends that, pursuant to SSR 06-03p, ALJ Lewandowski was obligated to resolve this conflict in the evidence. The Commissioner counters that ALJ Lewandowski was to consider plaintiff's case *de novo*, and including holding a new hearing and issuing a new decision in the case. According to the Commissioner, because ALJ Lewandowski was not bound by the prior *decision* in the case, the ALJ was not obligated to reconcile conflict between two competing VE testimonies. See doc. 11-1 at 21 (citing Uffre v. Astrue, 2008 WL 1792436, *7 (S.D.N.Y. Apr. 18, 2008) (noting that where case has been remanded, "the *first decision* [had] no bearing on these proceedings") (emphasis adeded) (citing Social Security Administration, Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual, I-2-8-18(A) (available at www.ssa.gov))). The Commissioner also contends that SSR 06-03p does not apply to VE testimony, but only to "care providers who are not 'acceptable medical sources.'" Doc. 11-1 at 22.

Initially, the Court finds that SSR 06-03p does not appear to apply to VE testimony. SSR 06-03p[3] was issued, in part, "[t]o clarify how [the SSA] consider[s] opinions from sources who are not 'acceptable medical sources.'" *Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims . . .*, SSR 06-03P (S.S.A. Aug. 9, 2006), at *1. The ruling gives examples of "other source" evidence,

---

[3] SSR 06-03p was rescinded by Federal Register Notice Vol. 82, No. 57, p. 15263 effective March 27, 2017, but remained in effect during the time period relevant to this case.

including educational personnel, public and private social welfare agency personnel, and family, caregivers, or friends of applicants. The Court has found no authority for plaintiff's proposition that vocational experts are one of the "other sources" contemplated by this ruling, and the examples given by the Administration do not provide support for the conclusion that VEs are included within this ruling as "other source" evidence.

However, simply because SSR 06-03p does not explicitly apply to the situation here does not mean that ALJ Lewandowski was absolved from reconciling the conflicting evidence given by the VEs.[4] Moreover, as plaintiff points out in her reply memorandum, the specific issue presented in this case is unique. Although it is true that, upon a remand by the Appeals Council, the ALJ is to consider the case *de novo*, the ALJ obviously does so with reference to the complete administrative record, which includes any previously-taken VE testimony. The Second Circuit's decision in Uffre does not hold otherwise; the decision merely notes that,

---

[4] Although neither party cites SSR 00-4p, that ruling provides that "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination . . . about whether the claimant is disabled." *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P (S.S.A. Dec. 4, 2000). At the very least, the conflicting testimony of these two VEs put the ALJ on notice of an apparent inconsistency between the VE testimony and the DOT, since it does not appear that *both* VEs' conflicting testimony could be consistent with the DOT. See In ac Diaz v. Astrue, 2012 WL 3903388, *9 (D. Conn. Aug. 2, 2012), report and recommendation adopted, 2012 WL 3854958 (D. Conn. Sept. 5, 2012) ("In accordance with SSR 00-4p, an ALJ has an affirmative duty to ask whether there are inconsistencies with the VE's testimony and the DOT.").

after a remand, an ALJ's *prior decision*, which has been vacated, does not bear on the proceedings on remand. 2008 WL 1792436 at *7.

Although the Court has not located any case law directly analogous to the instant case, relevant precedent does recognize VE testimony as evidence which, if materially inconsistent with the Dictionary of Occupational Titles ("DOT"), some other evidence in the record, or SSA policy, must be revisited and reconciled on remand. See, e.g., Robles v. Comm'r of Soc. Sec., 2016 WL 7048709, *6 (N.D.N.Y. Dec. 5, 2016) (remanding where VE testimony presented conflict in the evidence such that "the Court [could not] determine whether substantial evidence support[ed] the ALJ's step-five findings") (citing Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014) ("[T]he record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical [given by the ALJ] and [the] DOT job listing. . . . Further, the VE did not explain the possible conflict and the ALJ sought no such explanation.")); Morales v. Astrue, 2012 WL 4793868, *1 (S.D.N.Y. Oct. 9, 2012) (holding that the ALJ's erroneous reliance on testimony of the vocational expert that was inconsistent with SSA policy compelled remand). The Court is not convinced by the Commissioner's argument that, on the specific facts of this case, the ALJ had no duty to resolve the conflicting evidence – especially considering that if VE Tolley's original testimony had been credited, ALJ Lewandowski would have been obligated to find that plaintiff could not perform any PRW and would have had to move on to step five of the analysis.

11

Generally speaking, "the resolution of [conflicting evidence] is the province of the ALJ[.]" Pascariello v. Heckler, 1985 WL 3837, *4 (S.D.N.Y. Nov. 12, 1985) (citing Richardson v. Perales. 402 U.S. 389, 399 (1971)). The Court is not presented with any authority as to why this general rule should not be applied to the resolution of conflicts in VE testimony, especially here where VE Tolley's testimony, if credited over VE Steinbrenner's, would render ALJ Lewandowski's step four finding unsupported by substantial evidence and necessitate proceeding to step five. In short, the ALJ's failure to reconcile the inconsistent VE testimony in this case resulted in a decision that was not based on substantial evidence or the correct legal standards. See Duran v. Astrue, 654 F. Supp. 2d 1298, 1304 (D. Colo. 2009) (remanding, finding that the "ALJ's failure to reconcile [the] internal inconsistency [in the VE's testimony] show[ed that] the ALJ's [step four] finding . . . was not based upon substantial evidence and the correct legal standards"); Patton v. Colvin, 2013 WL 6018059, *6 (C.D. Cal. Nov. 12, 2013) (remanding where "apparent conflicts exist[ed] between . . . two sources of vocational evidence," in that case, VE testimony and the DOT, and noting that the "ALJ's error was not harmless because there was 'an apparent conflict with no basis for the vocational expert's deviation'"). Accordingly, this case is remanded for further consideration of the VE testimony from both prior hearings. The ALJ is directed to recall a VE to clarify, with specific reference to the DOT, whether plaintiff with the RFC found on remand is able to perform any PRW. The Court notes

12

that, after consideration of the further issues discussed below, the ALJ's RFC finding may be altered on remand.

–is this affected by later issues? Directions on remand - RFC may be altered

**B.    Evaluation of Counselor Fry's Opinion**

Plaintiff contends that the ALJ failed to properly weigh the opinion of her counselor, Mr. Fry. Mr. Fry is an "other source" pursuant to the regulations. See 20 C.F.R. § 404.1513(d); SSR 06-03p (listing social workers and counselors as other sources). ALJ Lewandowski did not explain what weight he gave to Mr. Fry's opinion, but stated that he gave it no "controlling or extra weight because a counselor's opinion is not a medical opinion [pursuant to the regulations]." T. 31.

The ALJ stated that he considered Mr. Fry's opinion in limiting plaintiff to "non-confrontational and non-negotiations type jobs with extremely limited interaction/contact with coworkers, supervision and the public." T. 31. However, the decision makes clear that the sole factor the ALJ used in deciding not to afford the opinion any "extra weight" was the fact that Mr. Fry was an "other source," not a "medical source," under C.F.R. § 404.1513. This was error. An other source's opinion must be considered in light of the factors applicable to medical sources. See Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("In weighing the opinions of 'other sources', the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. 404.1527(d).").

Because Mr. Fry was the only treating source to provide a functional assessment, it was even more important for the ALJ to carefully consider and weigh the opinion – even if this meant giving it more weight than the consulting opinions. See id. ("Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician."); Wells v. Colvin, 2015 WL 6829711, *4 (W.D.N.Y. Nov. 6, 2015) (collecting cases).

This case is therefore remanded for further consideration of Mr. Fry's opinion. If the ALJ decides to discount Mr. Fry's opinion, he must provide good reasons. See Kentile, 2014 WL 2014 WL 3534905 at *8 ("The Regulations require the ALJ to engage in a detailed analysis of [the treating opinion] and provide 'good reasons' for discounting [it].") (citing Stytzer v. Astrue, 2010 WL 3907771, *6 (N.D.N.Y. 2010)). If the ALJ deems it necessary, he may reach out to plaintiff's current and local treating providers and obtain further opinion evidence as to her functional limitations.

**C.  Discussion of the Opinions of Drs. Drake and Zuess**

Plaintiff contends that the ALJ failed to properly weigh the opinions of consulting examining psychologist Dr. Drake and consulting reviewing psychologist Dr. Zuess. As discussed above, Dr. Drake opined that although plaintiff was able to follow and recall simple instructions in a work setting, she may have problems responding appropriately in a work setting but "should be able to perform in some work settings where she [had] less social

14

interaction." T. 472. A second reviewing psychologist, Dr. Jonathan Zuess, completed an assessment on February 8, 2010, in which he opined that plaintiff was markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and that she was moderately limited in several areas involving understanding and memory, sustained concentration and persistence, and social interaction. The Appeals Council explicitly ordered the ALJ on remand to further consider the opinions of Drs. Drake and Zuess.

Although he discussed the opinions of Drs. Drake and Zuess, ALJ Lewandowski did not state what weight, if any, he gave to them. This failure violated not only the Appeals Council's instructions, but also the regulations in general. See Dommes v. Colvin, 2016 WL 7104900, *4 (N.D.N.Y. Dec. 6, 2016) ("[R]eviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand."); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Accordingly, on remand, the ALJ is directed to further consider the opinions of Drs. Drake and Zuess, as the Appeals Council ordered, and explain the weight given to this opinion evidence. On remand, the ALJ must clearly explain what evidence in the record supports the specific functional limitations found in the RFC.

### D. Consideration of Lay Evidence

Finally, plaintiff contends that the ALJ failed to properly evaluate the evidence given by plaintiff's husband, Scott Vishner, and plaintiff's friend, Linda Fenton, in Third Party Function

15

Reports completed as part of plaintiff's application. These reports described various functional limitations and noted plaintiff's frequent mood swings, which in the words of Ms. Fenton, "[made] it hard to be around her sometimes." T. 344. Mr. Vishner reported that plaintiff cleaned the house "about 2 times a month while in a manic obsessive state," did not handle stress well, and "her routine must remain constant or she slips into manic depression states." T. 362-69.

The ALJ gave these statements no weight, finding that "[g]iven the nature of their relationship to the claimant, they [were], understandably, sympathetic to the claimant." T. 31. The ALJ erred in assigning no weight to Mr. Visher's and Ms. Fentons opinion for the sole reason that they were "sympathetic" to plaintiff. "[S]pouses [and] friends" are "other sources" under the regulations. 20 C.F.R. 404.1513(d); SSR 06-03p. As "other source" evidence, the opinions from plaintiff's husband and friend, like the opinion of counselor Fry, must be weighed with reference to the factors applicable to medical opinion evidence. See Saxon, 781 F. Supp. 2d at 104. On remand, the ALJ is directed to do so.

The Court notes plaintiff's request that this case be remanded solely for the calculation and payment of benefits. Unfortunately, on this record, the Court is unable to grant this relief without engaging in an impermissible reweighing of the evidence. The evidence in the record is not so persuasive as to the issue of disability that it can be conclusively said that plaintiff is disabled. Cf. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).

On remand, however, the Court directs the ALJ to accept any further evidence regarding disability, including additional opinion evidence from any treating sources, which plaintiff provides in a timely manner.

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 15) is denied and plaintiff's motion (Doc. 8) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   April 24, 2017
         Rochester, New York.